[No. 3694.]

HERR ET AL. v. SULLIVAN.

1. CONTRACTS—MORTGAGES—RELEASE—WAIVER—ESTOPPEL.
A corporation having certain mortgages on its property issued bonds to fund its indebtedness, and placed them in the hands of one H. for sale, and to apply the proceeds towards the paying off the mortgage debts in their order, and conveyed all its property to H., in trust to secure the bonds.  S. who held a second mortgage, entered into contract with the mortgagor and H., the trustee, whereby S. released his mortgage in consideration that all bonds not sold within sixty days should be delivered to him as collateral security, and S. employed H. as his attorney to collect other collateral security held by him.  Afterwards H. became the owner of the first mortgage debt, and in order to make the bonds a first lien entered into a contract with the mortgagor, whereby he released his first mortgage and took a conveyance of all unsold bonds as collateral security.  *Held*

that S. was entitled to a first lien in preference to H. on all bonds not sold within the sixty days, and his failure to demand the bonds at the end of the sixty days did not waive his right. And that H. having released his first mortgage for the purpose of making the bonds a first lien, was estopped from claiming that the original debt was a prior lien to the bonds.

2. TRUSTEE—AUTHORITY—APPLICATION OF TRUST FUND.

Where a corporation issued bonds, to fund its debts, secured by mortgage on its properties, which authorized the bondholders to procure insurance of the property, and provided that the premiums for such insurance should become additional indebtedness secured by the mortgage, and the bonds were placed in the hands of a trustee for sale, the proceeds to be applied towards the payment of debts constituting first liens upon the property, the trustee was not authorized to pay insurance on the property and interest on bonds sold, out of the proceeds of the sale of bonds.

3. SECURITIES—ELECTION.

One who holds several securities for the same debt has a right to proceed against any one or more of them to make his debt without releasing the others.

*Error to the District Court of Arapahoe County.*

THE facts that are material to the questions presented by the record in this case are as follows : The Farmers' Protective Association, a corporation, was the owner of two pieces of property in Fort Collins, Larimer county, Colorado, on one of which was situated a grain elevator and on the other a flouring mill, which for convenience are designated in the record as the "elevator property" and the "mill property." On the 2d day of October, 1886, being indebted to Miles A. Brown in the sum of $15,000, the association executed its note to him for that amount, payable one year after date, with interest at the rate of ten per cent per annum ; and to secure the payment of the same, executed a trust deed upon the elevator property ; and also hypothecated certain notes given by various persons to the association, the face value of which aggregated about the sum of $25,000.

On the 15th day of August, 1887, being indebted to E. P. Allis & Company in the sum of $22,000, it executed two notes in their favor, one for $8,000, payable October 15, 1888,

and the other for $14,000, due October 15, 1889; both bearing interest at the rate of seven per cent per annum; and secured the same by a trust deed upon the mill property.

On the 4th day of March, 1888, being indebted to James. W. Sullivan, the defendant in error, in the sum of $17,928.94, it executed its promissory note to him for that amount, payable on or before October 15, 1888, with interest at the rate of ten per cent per annum; and to secure this note, executed a trust deed upon the elevator property, and also upon the mill property, and gave him a lien subject to that of Brown upon the notes and collaterals, which were then held by the First National Bank of Fort Collins; and also assigned and delivered to him, as collateral security, certain other notes of individuals held by the association, the face value of which amounted in the aggregate to about $27,000.

On September 1, 1888, in order to fund its indebtedness and procure money to pay these obligations, the association authorized the issue of 110 bonds, each for $500, payable to the bearer in five years, at eight per cent interest, payable semi-annually; and to secure the same it conveyed the mill property and the elevator property, and all its corporate rights, franchises and personal property, to plaintiff in error Theodore W. Herr, and one Samuel Daggy, in trust, and entered into an arrangement with Herr by which he was to undertake the negotiation of these bonds. In pursuance of this arrangement, on October 12, 1888, it delivered the 110 bonds to him, for which he executed the following receipt:

"Received Fort Collins, October 12, 1888, of The Farmers' Protective Association, 110 negotiable bonds with interest coupons attached thereto, secured by deed of trust upon the real estate and franchises of said corporation, said bonds being for the sum of $500 each, payable in five years from September 1, 1888, with interest at 8 per cent, payable semi-annually. Said bonds and deed of trust being held by us in trust for said association, for the purpose of securing a loan of said association of $55,000 to be paid to the use of same, less our commission and expenses, and unless such loan is procured.

and made, said bonds and deed of trust to be returned to said association fully canceled and released. Said negotiations to be completed within sixty days from this date, or above named securities to be returned as aforesaid. If said loan shall be made, the same shall be applied as follows: 1st. To payment of deed of trust to secure E. P. Allis & Co.'s indebtedness. 2d. To secure payment of deed of trust to secure M. A. Brown and others. 3d. To the payment of J. W. Sullivan of the sum of $12,000. 4th. Any balance after deducting commissions and expenses is to be paid over to the association or to its president. It is understood that before any of said applications of the money arising from said negotiations shall be made, the elevator property belonging to said association shall first be redeemed from tax sale."

Afterwards, and on October 31, 1888, in order to obtain the release of the trust deeds held by Sullivan upon the property, an agreement was made between the Farmers' Protective Association as party of the first part, J. W. Sullivan party of the second part, and Theodore W. Herr of the third part, in which, after reciting the execution and delivery of the bonds, and the conveyance of the property of the association in trust to Herr and Daggy, and the receipt above set forth, and the trust deeds held by Sullivan; and that the purpose was to procure a release of these trust deeds in order to enable the association to negotiate the loan contemplated and provided for by the issuance of the bonds; that in consideration of releases properly executed and acknowledged of the said trust deeds by Sullivan, it was agreed " that in case the said bonds should not be negotiated in accordance with the terms of the receipt signed by the said Herr and hereinbefore embodied and as herein modified, that the said bonds and each and every of them unsold shall be returned and delivered to the said Sullivan, who shall become the owner and holder of them and of all contracts accompanying them for and as collateral security for the payment of his indebtedness heretofore secured by the said trust deed; * * * nor shall any right, lien, claim or demand of the said Sullivan be in any way affected

VOL. XXV—13

by the making of said release, except that the lien of said Sullivan upon the realty described in his said trust deeds shall become subordinate to the rights and lien of the holder or holders of said bonds should they be negotiated; but should they not be negotiated, the said lien of the said Sullivan shall continue and be in full force and effect, notwithstanding the releases."

In pursuance of this agreement, Sullivan caused releases of his trust deeds to be executed and recorded in the office of the clerk and recorder of Larimer county. He also engaged Herr, who was a practicing attorney, to collect the notes that the association deposited with him as collateral security. Only two of the bonds were sold within the sixty days provided in the original receipt given by Herr. But the bonds were not withdrawn, and Herr continued his efforts to sell, and from time to time until September 18, 1893, did sell thirty of the bonds, receiving therefor $15,219.44. In July, 1889, Allis & Company advertised the mill property for sale under their trust deed. At the solicitation of the association Herr purchased their claim, paying therefor $22,218.52. In consideration therefor, and to cover the balance of $1,275 due him for insurance, interest, commissions, etc., and the sum of $500 for making such purchase, the association executed to him its promissory note for $25,706.75, due in one year from date, with interest at the rate of twelve per cent per annum, payable quarterly; and as collateral security for the payment of the same, and for the repayment of any money he might thereafter advance for the corporation for insurance, interest, taxes, costs, and other expenses, agreed that Herr should hold the Allis & Company notes and trust deed, and the unsold bonds and trust deed, insurance and other securities executed to secure the same; and authorized him to continue his efforts to negotiate the sale of the bonds, and appropriate the proceeds towards the liquidation of the sum evidenced by the note, until paid.

In July, 1890, the holders of the Brown note advertised the elevator property for sale under their trust deed. Again,

at the solicitation of the association, Herr procured a postponement until March, 1891, by purchasing $3,000 of the indebtedness. And on August 8, 1891, to prevent another sale, Herr then advertised and at the request of the association purchased, the remainder of the Brown claim, paying therefor $12,428.

At this time twenty-two bonds had been sold. At a meeting of the board of trustees of the Farmers' Protective Association held the 22d of August, 1891, the following preamable and resolutions were adopted:

" Whereas, Theo. W. Herr is now the legal holder of the claims against this association lately held by the First National Bank of Fort Collins, and Peter Anderson, which claims are secured by a trust deed on the elevator belonging to us ; and whereas it is proposed by said Herr to release said elevator from the lien and operation of said trust deed,

" Now, therefore, be it resolved, that in case said Herr will and do cause the release of said elevator from the lien and operation of said trust deed, he shall be and hereby is authorized and empowered to hold all the unsold bonds of this association, now secured by trust deed on all our property; and all other securities and collaterals now held by him or in his possession, except as to the claims of James W. Sullivan, as collateral security in addition to that originally held by said Bank and said Anderson, to secure the claims lately held by them."

In pursuance of this resolution, and for the consideration therein mentioned, Herr released the Brown trust deed. As above stated, in September, 1893, when the bonds matured, Herr had realized $15,219.44 from the sale of thirty bonds. He had also deposited with the German National Bank twenty more to secure his personal indebtedness. In the statement of his accounts with the association, introduced in evidence upon the trial, he claimed credit on the bond account for disbursements aggregating $16,360.59. These principally consisted of payments for insurance on the mill, interest on the bonds sold, trustees' fees and commissions.

When the bonds fell due and default was made in their payment, Herr and Daggy resigned as trustees, leaving the then acting sheriff of Arapahoe county as successor in trust under the trust deed to act as trustee. In view of the foreclosure of the trust deed given to secure the bonds, negotiations were entered into between Herr and Mr. T. J. O'Donnell, who was then the representative of, and acting in connection with Herr as the attorney for, Sullivan, as to the person who should bid in the property for the joint interest of all concerned. Several consultations were had, extending over a considerable period of time, and the evidence is conflicting as to what was finally agreed upon, O'Donnell claiming that it was understood that he was to become the purchaser of the property, and hold it in trust to be disposed of as might be satisfactory to Sullivan, Herr, and the holders of the bonds that had been sold. He further testifies that a form of advertisement was prepared, with the date of sale left blank, and given to Herr to take to Fort Collins, where the advertisement was to be published; that Herr filled the blank by inserting the 10th of October as the date of sale; that Herr afterward, notwithstanding this fact, represented to him that the sale was advertised for October 11. This is denied by Herr, who testifies that the first draft of the advertisement had given a date a little earlier than the 10th of October, and was changed to the 10th; that he made the change before publication; that after the notice was published he took a copy of the paper to O'Donnell and they looked it over and agreed it was all right. The sale was to take place at the Tremont street entrance to the courthouse in Denver. O'Donnell testifies that on the morning of the 10th he happened to be at the courthouse, and as he passed down the front steps he observed the sheriff reading a notice of sale, and Herr and others were standing by; that he inquired of Herr if the sheriff was reading a notice of their sale, and Herr answered "No;" that their sale would occur tomorrow, and that he, relying on that statement, then left. Herr's version of this is that O'Donnell asked him if the sheriff was reading the ad-

vertisement of their sale; that he said "No, ours comes next;" that O'Donnell stayed a little while, and finally went away. Shortly after, the sheriff of Arapahoe county, who was acting as successor in trust, read the notice and offered the property for sale. Thereupon Herr announced that he held a first trust deed upon the elevator property and a first trust deed upon the mill property, and that there was due him upon the two properties sums of money which were prior and superior liens to that represented by the trust deed securing the bonds under which the sale was being made, to the amount of about $40,000. The sheriff proceeded to sell the property subject to these claims; and one David H. Foreman, who was acting for Herr, bid off the property for the sum of $50.00. Herr had already prepared a deed from the sheriff as acting trustee, to Foreman, which was immediately executed; and a deed already prepared was signed by Foreman, conveying the property to the Harmony Mills & Elevator Company, a corporation which Herr had organized for the purpose of taking title to the property. O'Donnell further testifies that it had been agreed between him and Herr that he should draw up the papers to provide for the bidding of the property in in trust; and that in anticipation of the sale taking place the next day he, about 11 o'clock, called Herr by telephone to come to his office for the purpose of preparing these papers, when Herr informed him that the property had been sold; that he then called upon Herr at his office and had a conversation with him in regard to the matter, when he learned that the deeds above mentioned had been executed; that he asked Herr if he proposed to carry out the agreement that the property should be held in trust for all parties interested; Herr replied no, he did not. Immediately thereafter this suit was commenced, for the purpose of setting aside the sale and canceling the deeds made in pursuance thereof; to declare the release made by Herr of the trust deed upon the elevator property to be of full force and effect; to determine the amount due on the Allis & Company note, which constitutes a first lien upon the mill property; and to compel Herr to

account for the moneys received by him for the sale of the bonds and other collateral, and to turn over to the plaintiff Sullivan the unsold bonds.

Upon the trial of the cause the court below made specific findings of fact and rendered a decree thereon, granting the relief prayed for. To reverse this decree Herr and the elevator company bring the case here on error.

Mr. W. HENRY SMITH, Mr. WILLIS B. HERR, Mr. E. A. BALLARD, Mr. HUGH BUTLER and Mr. OSCAR REUTER, for plaintiffs in error.

Mr. T. J. O'DONNELL, Mr. W. S. DECKER and Mr. MILTON SMITH, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

From the foregoing statement it will be seen that the important questions presented in this case are, whether Sullivan or Herr is entitled to the unsold bonds that were issued by the Farmers' Protective Association and delivered to Herr for the purpose of sale; and whether the trust deed given to secure the payment of the bonds constitutes a first lien upon the elevator property. The latter perhaps is the more important of the two, since it affects the value of the bonds, and the rights of the purchasers of the bonds that were sold, and who are not parties to this action. The solution of both of these questions depends upon the force and effect to be given to the several agreements under which the bonds were placed and continued in Herr's possession. By the tripartite agreement entered into on October 31, 1888, it is expressly provided, in consideration of Sullivan releasing the trust deeds held by him that constituted second liens upon both the mill and elevator properties, that in case the bonds should not be negotiated in accordance with the terms of the receipt given by Herr on October 12, and as then modified, that each and every of the bonds unsold should be delivered to Sullivan, to

be owned and held by him as collateral security for the payment of his indebtedness theretofore secured by the trust deeds. It is clear that by this arrangement Sullivan, for a good and sufficient consideration, acquired a right to the unsold bonds. But it is contended by plaintiffs in error that because Sullivan did not demand the bonds at the expiration of the sixty days within which they were to be sold, but permitted them to remain in Herr's hands, he waived this right. We can find nothing in the record to justify such an inference; besides, acting in the confidential relation of attorney towards Sullivan, Herr was a party to this agreement, and continued the negotiation of the bonds with full knowledge of Sullivan's rights in the matter; and, notwithstanding that in July, 1889, upon his purchase of the Allis & Company note, the association agreed, without the knowledge or consent of Sullivan, that he should hold the unsold bonds, together with other collateral, as security, on August 22, 1891, he having purchased and being then the legal owner and holder of the Brown indebtedness, which constituted a first lien upon the elevator property, released the same in pursuance of a resolution of that date, wherein it was expressly provided that he should hold all the unsold bonds, together with other collaterals, as security "except as to the claims of Sullivan," thereby recognizing Sullivan's claim as still existing upon the unsold bonds, and acknowledging that the right he acquired to the bonds was subject to such claim.

To avoid the effect of this admission, it is insisted that the language of the resolution is ambiguous, and did not refer to the bonds, but to other notes and securities mentioned. The resolution is not susceptible of such a construction. The language used is plain and unmistakably refers to the bonds, as well as to other collateral; and clearly recognizes the existence of the right to the bonds that Sullivan acquired under the tripartite agreement.

We think, therefore, that the court below correctly found that he was entitled to their possession. It is insisted, however, that the release by Herr of the Brown trust deed, which

constituted a prior lien upon the elevator property to that of the trust deed given to secure the payment of the bonds, should not be effective because made without consideration. That this claim cannot be sustained is evident for two reasons : First, not only was there a consideration, as shown by the resolution above referred to, but the release was made for the express purpose of making the trust deed given to secure the payment of the bonds a first lien upon the elevator property, in order to facilitate their sale; and he is therefore estopped from asserting that such deed is not a paramount and first lien. Second, as found by the court below, the sum realized by him from the bonds sold, and for which he is chargeable by reason of his conversion of those pledged, was more than sufficient to pay the indebtedness represented by the Brown note ; and that the claim was in fact paid. But it is said that this finding is not conclusive upon this review, because not based upon conflicting testimony, but was in opposition to the uncontradicted testimony of Herr himself, corroborated by the accounts which he presented. It is true that he testified, and his accounts show, that he had disbursed more than the amount of the proceeds of the bonds that were sold. But these disbursements consisted largely of premiums paid for insurance upon the mill, interest on the bonds sold, and other items, which were properly disallowed as credits against the proceeds of the bonds. As expressed in the receipt of October 12, and as modified by the agreement of October 31, all money realized from the sale of bonds, after first redeeming the elevator property from tax sale, should be applied to the payment of the claims that constituted first liens upon the properties. And furthermore, the resolution of November 9, 1888, which authorized the trustees or the holders of the bonds to procure insurance upon the premises in case of failure on the part of the association to do so, expressly provided that all moneys thus paid, with interest thereon at the rate of ten per cent per annum, should become an additional indebtedness secured by the deed of trust, and be a lien on the real estate in the same manner as is incorporated therein.

To apply the money received from the sale of bonds to the payment of these items would not only defeat the object for which the bonds were sold, but violate the express agreement of the parties. We think, therefore, that the court correctly found that Herr was authorized to deduct from the moneys received by him from the sale of the bonds, his commissions, the amount paid to redeem the elevator property from the tax sale, and the amount paid for taxes and insurance on the elevator only; and that the net proceeds realized, together with other sums received by Herr, and the value of the bonds pledged, was more than sufficient to pay the Brown claim, and that said indebtedness was paid in full.

The accounts are very voluminous, and show that Herr received money from various sources other than the sale of bonds. It appears that during a portion of the time he had possession of, and operated, the elevator and mill, and realized from the operation of the latter $9,956.23, against which he claims various credits. The court below investigated this account, and in determining the amount of indebtedness secured by the first trust deed on the mill, among other items of expenditure, allowed him credit for the claims above specified, and after deducting the same from the total receipts, found that there was due $39,375.54, which constituted a first lien upon the mill property. In arriving at this result, the court considered the various items of debit and credit in the light of the oral testimony, and if we had the right to do so, we see no reason for disturbing its conclusion; nor do we think the court erred in fixing the amount due defendant in error without regard to the amount of certain uncollected securities held by him. He had realized nothing upon them, and we are aware of no rule that would justify the court in deducting them from the amount of his claim against the association. It is too well settled to admit of dispute that a creditor who holds several securities for the same debt has a right to realize the payment of his claim from any one of them, and Sullivan clearly had the right to enforce

**his** lien against the bonds, and subject them to the payment **of** his claim, without first exhausting his other securities.

The testimony introduced on the part of defendant in error as to what occurred between O'Donnell, as the representative of Sullivan, and Herr, in contemplation of, and immediately preceding, the trustee's sale on the morning of October 10, although disputed, is sufficient if accepted by the court as the true version of the matter, when taken in connection with the conduct of Herr at and subsequent to the sale, to justify its finding that the sale was fraudulent and void, and under the rule so frequently announced in this court, its finding, being based upon conflicting testimony, is conclusive upon this review, and its action in vacating the sale and canceling the conveyances made in pursuance thereof must be upheld. Upon a careful examination of the record we find no error that would justify a reversal. The judgment of the court below is accordingly affirmed.

*Affirmed.*